219 So.2d 330 (1969)
T. G. SOLOMON et al., d/b/a Bon Marche Company
v.
T. E. HICKMAN, Sr.
No. 7488.
Court of Appeal of Louisiana, First Circuit.
January 27, 1969.
Rehearing Denied March 10, 1969.
*331 John R. Sheppard, Lawrence A. Uter, Baton Rouge, for appellant.
Gordon A. Pugh, of Breazeale, Sachse & Wilson, Baton Rouge, for appellees.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
This devolutive appeal by defendant T. E. Hickman is a sequel to the appeal taken by said same defendant in Solomon v. Hickman, La.App., 213 So.2d 96, wherein we held appellant was not entitled to appeal suspensively from the judgment of the trial court decreeing cancellation of a certain lease entered into between plaintiff and defendant herein and ordering delivery of the subject premises to plaintiff-appellee. We now have the matter before us on the merits and conclude the trial court was correct in ordering cancellation and annulment of the lease in question.
The facts of this case are uncontroverted. It is conceded defendant Hickman was the lessee of plaintiffs T. G. Solomon and L. B. Edelman d/b/a Bon Marche Company (Bon Marche). The sole issue to be determined herein is one of law, namely, interpretation of the lease terms granting Bon Marche the right and option to cancel according to certain terms and conditions specified in the compact. Subject lease covered certain premises situated in Bon Marche Shopping Center, Baton Rouge, Louisiana, for the conduct therein and thereon of an establishment commonly known as a "cocktail lounge" under the trade name "Tonga Lounge" and dedicated to the retail sale of alcoholic beverages. It is also acknowledged that on September 11, 1967, appellant, as proprietor of Tonga Lounge, was convicted in the Family Court, East Baton Rouge Parish, of the offense of contributing to the delinquency of a juvenile by permitting a minor to patronize the lounge in question. Said conviction prompted Bon Marche to initiate an action to cancel the lease because of lessor's interpretation of a certain clause contained therein allegedly granting lessor the right of cancellation in the event of lessee's conviction of an offense of the nature indicated. Trial of said annulment action resulted in judgment in favor of lessor decreeing cancellation of the lease, hence this devolutive appeal from said determination.
Lessor's asserted right of cancellation is predicated upon the provisions of Section 4 of a "rider" appended to the lease. Said rider sets out at length and in considerable detail the standards of decorum and propriety imposed upon lessee with respect to operation of the lounge in question. The terms of the rider indicate a clear and unmistakable intent to insure that as nearly as possible operation of the lounge would redound to the credit rather than detriment of the shopping center. One such provision contained therein stipulates as follows:
"At no time will Tenant ever permit minors (i. e. anyone under 21 years of age) in the establishment, nor serve any beverage whatsoever to any minor."
Following the above quoted clause, Section 4 of the rider proceeds to require that defendant, inter alia, shall obey all local and other laws governing regulation of such places; refrain from permitting loud, dirty, vulgar or boisterous talk or conduct or fighting on the premises; refuse service *332 to any intoxicated patron; remove from the premises any inebriated or rowdy individual, and refrain from operating thereon any pinball or slot machine or device of similar nature.
Ensuing the foregoing regulatory provisions, Section 4 of the rider stipulates the following:
"If at any time during the term of this lease, Tenant is convicted or found guilty of or is repeatedly warned of offenses in violation of any law, statute or regulation or rule of the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana, the United States, or any duly authorized agency thereof, relating to the operation of said cocktail lounge either by law enforcement officials or by a court or administrative agency; or if Tenant breaches any agreement, covenant, stipulation or obligation set forth in this lease or in this Rider, the Landlord shall have the absolute right and privilege, at its sole option and discretion to immediately terminate this lease by written notice thereof delivered to Tenant; and thereupon, the Tenant will forthwith remove all of his stock and fixtures from said leased premises and vacate same in not to exceed thirty (30) days, and deliver the keys to the building to the landlord or his designated representative; and all of the provisions of this lease relating to termination will thereupon apply and be in full force and effect. The Landlord will not owe any compensation or reimbursement whatsoever to Tenant for any improvements, fixtures or stock which Tenant fails to remove and leaves in the leased premises after thirty (30) days."
Lessor's position, tersely stated, is that the above quoted provision entitled lessor to cancel the lease because of lessee's conviction of the hereinabove mentioned offense, upon giving the required thirty days written notice.
Lessee, however, although acknowledging receipt of the notice provided for in the hereinabove quoted portion of the rider, nevertheless contends cancellation may not be affected without the concurrence of the members of an organization known as the Merchant's Association of Bon Marche Shopping Center because of the terms of the two concluding paragraphs of Section 4 of the rider which read as follows:
"It is the purpose and intention of this section to insure that the operation of a cocktail lounge by the Tenant herein will be an asset to the Bon Marche Shopping Center, and not in anyway (sic) objectionable or offensive to other Tenants in the Bon Marche Shopping Center.
In case of any dispute or question as to whether the operation of this cocktail lounge is an asset or detrimental to the Bon Marche Shopping Center, the matter shall be submitted to the membership of the Merchants' Association of Bon Marche Shopping Center and their decision by majority vote shall be deemed decisive on the issue; and if the Merchants' Association thus decides that the cocktail lounge is detrimental, then the Landlord will have the absolute right and option in its discretion to terminate the lease in the manner hereinabove provided."
Relying upon the aforesaid terminating paragraphs of Section 4, appellant argues the terms of the lease, taken in their entirety, can be reasonably construed in no light other than to require action by the Merchants' Association as a condition precedent to cancellation of the lease and eviction for any cause whatsoever. So contending, appellant maintains plaintiff's action to cancel is premature inasmuch as it is conceded the dispute between lessor and lessee was not submitted to the Merchants' Association for arbitration.
It is well settled that contracts must be construed as a whole to determine the true intent of the parties as evidenced by all the terms included therein. LSA-C.C. *333 Article 1945; Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541. Likewise apposite to the case at hand is the rule that all clauses of an agreement are to be interpreted in reference and relation to each other giving to each that meaning which results from the entire act. LSA-C.C. Article 1955; Reuter v. Reuter's Succession, 206 La. 474, 19 So.2d 209.
When called upon to construe a contract, a court should never assume any clause therein was intended to be ambiguous or without meaning but rather should interpret the agreement in such manner as to give effect to all its provisions, if possible. Cerniglia v. Kral, 170 La. 372, 127 So. 872.
Viewed in the light of the foregoing rules, we find those portions of Section 4 of the rider giving lessor the right and option of cancellation in the event of the specific violations therein enumerated (including conviction of an offense of the nature herein conceded by appellant) were included for a purpose entirely different from the two concluding paragraphs of Section 4 providing for arbitration. Obviously, the former stipulations were intended and understood by the parties to accord lessor the privilege of unilateral annulment upon the occurrence of any of the violations specified, irrespective of whether such infraction was detrimental to the shopping center as a single unit. The clear purpose of these provisions was to maintain the standards set and we are unable to read any other intention therein. On the other hand, however, the provisions governing cancellation of the contract with the approval of the Merchants' Association was designed and intended to apply solely and only when, irrespective of any lease violation, the question might arise that operation of the lounge per se was detrimental to the shopping center. Such latter issue was not posed in the case at hand, consequently, arbitration was not in order.
On the contrary, an overt, active violation of the contract has been shown, which according to the express terms of the agreement, confers upon lessor the right of cancellation simply by giving the notice stipulated. This the lessor has done effectuating annulment of the lease.
The conclusions herein reached obviate the necessity of our considering lessor's alternative contention that as a matter of law termination of a lease may not be made the subject of arbitration.
Accordingly, the judgment of the trial court is affirmed at the cost of appellant, T. E. Hickman, Sr.
Affirmed.