**ROYAL ST. LOUIS, INC. and Chateau Louisiane, Inc., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 76–4141.**

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1978.

Stephen B. Lemann, Warner H. Anthony, Jr., J. Thomas Lewis, New Orleans, La., DeJongh Franklin, Bruce H. Beerman, Atlanta, Ga., Thomas B. Lemann, New Orleans, La., for plaintiffs-appellants.

Gerald J. Gallinghouse, U. S. Atty., Leonard P. Avery, Asst. U. S. Atty., New Orleans, La., Richard Farber, Scott P. Crampton, Asst. Attys. Gen., F. Arnold Heller, Myron C. Baum, Acting Asst. Attys. Gen., Gilbert E. Andrews, Acting Chief, App. Section, U. S. Dept. of Justice, Tax Div., Washington, D. C., Howard A. Weinberger, U. S. Dept. of Justice, Tax Div., Dallas, Tex., for defendant-appellee.

Before RONEY, TJOFLAT, and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

On December 12, 1967, plaintiffs-lessors Royal St. Louis, Inc. and Chateau Louisiane, Inc. entered into a complex lease with lessee Royal Orleans, Inc. for the construction, furnishing and operation of the Royal Sonesta Hotel in New Orleans. Pursuant to the terms of the lease, lessors furnished to the lessee furniture and other personalty necessary for the initial operation of the hotel.

In this tax refund suit against the United States, the sole issue we are called upon to decide is whether or not the District Court erred in holding that the plaintiffs-lessors were not entitled to a deduction of $370,886.47 representing depreciation on the personal property furnished the lessee. Specifically, we must decide whether the trial court erred in holding that the lease imposes upon the lessee the obligation to return to the lessor at the termination or expiration of the lease, personalty of equal value as that provided the lessee so as to preclude economic loss to the lessors. If the lease does impose such an obligation, lessors are not entitled to the depreciation deduction. *Kem v. C.I.R.*, 432 F.2d 961 (9th Cir. 1970).

The controversy revolves around the proper interpretation to be given to Section 8 of the lease which states as follows:

> *Tenant shall at its own expense maintain all of the furnishings and equipment in first class condition, replacing the same when necessary for such purpose . .*, the cost whereof shall be deductible as an expense in computing Net Profit hereunder. *All furnishings installed in the demised premises by Tenant whether as replacements or additions, shall forthwith become the property of landlord and a portion of the property leased to Tenant.* (emphasis added)

The interpretation of the words "first class condition" is critical to resolution of the case. Through application of basic contract principles, we conclude that the lessee is obligated to maintain the personal property in such a condition that the lessors will suffer no economic loss.

■ A basic principle of contract law in Louisiana, as well as elsewhere, is that "contracts must be construed as a whole to determine the true intent of the parties." *Soloman v. Hickman*, 219 So.2d 330, 332 (La.App.1969). As the Court in *Soloman* further stated, ". . . all clauses of an agreement are to be interpreted in reference and relation to each other giving to each that meaning which results from the entire act." *Id.* at 333.

■ In addition to Section 8, the other lease provisions relevant to the resolution of the issue are stated below:

7. (a) Landlord agrees at its cost and expense to construct on the demised premises a first class hotel of approximately 489 rooms,

\* \* \* \* \* \*

12. (a) The Tenant will at all times keep and maintain the demised premises and all buildings and improvements at any time situated thereon in good rentable order and condition, reasonable wear and tear excepted, and shall take good care of the personal property used in connection with the operation thereof, renewing, repairing and supplementing the same as may be necessary in the proper conduct of the hotel (except where unavailable due to circumstances beyond the Tenant's control). Tenant shall at its own expense pay for all utilities furnished to the demised premises during the term of this lease as the same shall become due and payable.

(b) During each period of three lease years during the original term only of this lease, Tenant covenants to expend upon the demised premises, the building and fixtures therein, and the furniture, furnishings, equipment, trade fixtures and other chattel property of every kind, nature and description located and used in the conduct of the hotel business therein, for repairs, decoration and redecoration, replacements, renewals, alterations, additions, and/or improvements, whether by way of capital improvements or otherwise, not less than the sum of $600,000.00, inclusive both of such expenditures through direct labor on Tenant's payroll for carpenters, masons, electricians and other craftsmen and employees, and of such expenditures made through independent contractors or subcontractors, and/or also through the purchase and acquisition of materials and of any such chattel property and installation thereof. If the Tenant should be prevented or prohibited by government regulations or controls, unavoidable casualty, strike, civil commotion, war, or other force majeure from making such expenditures or any part thereof, then the period during which the Tenant is so prevented shall be added to the period during which such expenditure would otherwise by this provision be required to be made.

Each such three-year period is herein referred to as a Triennial Period. If at the end of any Triennial Period during the original term of this lease Tenant shall not so have expended the full amount of $600,000.00 as aforesaid, Tenant shall within 90 days thereafter deposit the deficiency with The Equitable Life Assurance Society of the United States, as escrow agent, who shall at any time during the term of this lease make the amounts so deposited available to Tenant to be applied by Tenant towards the cost of making structural repairs or alterations to the demised premises which Tenant may desire to make and upon the expiration of the term of this lease, any amounts not so applied shall be retained by Landlord as additional rent.

Should the original term of this lease terminate less than three years after the expiration of any Triennial Period, Tenant's obligation under this subdivision (b) shall be proportionately reduced.

\* \* \* \* \* \*

26. Upon the termination or expiration of this lease, Tenant shall surrender to Landlord the demised premises in good condition and repair, ordinary wear and tear and injury by fire or other casualty or by acts of God excepted.

These sections provide the critical evidence of the intent of the lessors and lessee with respect to the lessee's obligation to the lessors upon the expiration or termination of the lease.

A review of Sections 12(a) and 26 reveals that, with respect to the building and other realty comprising the hotel, the obligation of the lessee at the termination or expiration of the lease is expressly conditioned. The lessee is only obligated to return such property to the lessors "in good condition . . . ., reasonable wear and tear excepted."

No such qualification appears with respect to the obligation regarding personal-

ty. The omission of the "wear and tear" exception with respect to personalty, when compared to the inclusion of the "wear and tear" exception with respect to the realty, leads us to agree with the trial judge that such omission was intended. We agree with the trial judge that, with respect to the furnished personal property, the intention of the parties to the lease was that the lessee's obligation would not be conditioned. Lessee was obliged to maintain personalty in first class condition, whether or not a worse condition resulted from wear and tear. Section 8 requires the lessee to maintain that property in "first class condition."

Other sections of the lease buttress the conclusion we reach. Section 7(a) required the lessors to construct a "first class hotel." Under well established principles of contract law, we must presume that the contracting parties intended that the same words appearing in different clauses be given a meaning consistent with each other. LSA–C.C. Arts. 1948, 1955; *Plantation Pipe Line Co. v. Kaiser Aluminum & Chemical Corp.*, 222 So.2d 905 (La.App.1969). The use of the words "first class" with respect to the construction of the hotel leads us to the conclusion that the parties intended the lessee to be furnished with a new, functional hotel, a structure which at its completion lacked any wear and tear, obsolescence or other economic loss. A similar interpretation must be given to the words "first class condition" as it appears in Section 8.

Likewise, Section 12(a) states that the lessee "shall take good care of the personal property used in connection with the operation . . . [of the hotel], renewing, repairing, and supplementing the same as may be necessary in the proper conduct of the hotel . . .." This obligation of the lessee to repair and replace is further delineated in Section 12(b) which requires the expenditure of specific amounts of funds, though such funds may also be expended on the buildings and the fixtures.

Therefore, we conclude that the lease imposed upon the lessee the obligation to maintain the personal property so as to preclude economic loss by the lessors over the period of the lease. Having so held, the lessors are not entitled to the claimed depreciation deduction. *Kem v. C.I.R., supra.*

■ There remain several contentions of the plaintiffs that must be answered. Plaintiffs contend that the term "demised premises" as used in Sections 12(a) and 26 should be construed to include the personal property so that this property will also be subject to the "wear and tear" exception contained in those Sections. We disagree. To give effect to this contention would in effect render Section 8 a nullity as well as contravene the established principle of contract law that contracts should be construed so that each provision may be given effect. LSA–C.C. Art. 1951; *Wells v. Spears*, 255 So.2d 215 (La.App.1971).

■ Plaintiffs' contention that Articles 2719 and 2720 of the Revised Civil Code of Louisiana provide an allowance for ordinary wear and tear by operation of law must also be rejected. It is well established that the application of Article 2719 may be displaced by agreement between the parties. We agree with the trial court that it would be unreasonable to conclude, in light of the length and complexity of this carefully constructed commercial lease, that the parties intended, by silence, to have Article 2719 apply. Rather, the only reasonable conclusion to be drawn is that by use of the words "first class condition" Article 2719 was displaced by the agreement of the parties.

■ At oral argument, plaintiffs admitted that they will receive personalty of substantial value at the termination of the lease. They contend, however, that while they will receive back personalty in first class condition, it will not be new and thus some value has been lost. Nowhere through the course of this litigation have plaintiffs furnished the Commissioner or any Court with the value, if such can be ascertained, of such a differential or a schedule of such depreciation. Instead, plaintiffs seek to depreciate the total amount expended upon personalty while receiving back property of first class condition, subject to exclusion from income pursuant to 26 I.R.C. 109.

Indeed, the lessee has replaced much of the personalty and is currently taking a depreciation deduction on such replacements. Plaintiffs, however, have ignored this reality and maintain they are entitled to depreciate assets no longer on the premises as though they existed. The law does not countenance such a result.

AFFIRMED.