**HIBERNIA NATIONAL BANK IN NEW ORLEANS TRUST DIVISION, Trustee under Liquidating Trust by Royal St. Louis, Inc., Formerly a Louisiana Corporation**

v.

**UNITED STATES of America.**

Civ. A. No. 82–622.

United States District Court, E.D. Louisiana.

May 6, 1983.

---

Stephen B. Lemann, Monroe & Lemann, New Orleans, La., for plaintiff.

Victoria J. Sherlock, Attorney, Tax Division, Dept. of Justice, Washington, D.C., for defendant.

## ORDER AND REASONS

DUPLANTIER, District Judge.

Plaintiff, Hibernia National Bank Trust Division, the trustee under a liquidating trust established by Royal St. Louis, Inc. seeks a refund of a portion of income taxes paid for the years 1972 through 1977. At issue are depreciation deductions disallowed by the Commissioner of Internal Revenue. Both parties agree that no genuine issues of material fact are involved. For the following reasons, plaintiff's motion for summary judgment is granted.

In 1967, Royal St. Louis, Inc., through its subsidiary Chateau Louisane, Inc., granted a twenty-five year lease to Royal Orleans, Inc., for the construction, furnishing and operation of the Royal Sonesta Hotel in New Orleans. Under the lease, the lessor provided all furniture, appliances, fixtures, equipment, etc.; but the lessee is obliged to maintain and/or replace these items. In fact, the lease requires the lessee to spend a minimum of $600,000 to this end in each three year lease period. At the lease termination, the lessor retains all realty and personalty.

In 1974, I.R.S., claiming that various terms of the lease evidenced the parties' intention that the lessor should be protected from all economic loss, disallowed the lessor's 1970 depreciation deduction on the hotel's furniture and other equipment. The taxpayer sued for a refund; the district court upheld the government, *Royal St. Louis, Inc. v. United States,* 76 T.C. 2 (E.D. La.1976), and the Fifth Circuit affirmed, 578 F.2d 1017 (5th Cir.1978).

Meanwhile, in 1977, the parties to the lease revised certain sections of the lease to clarify their original intent concerning maintenance and replacement of the furnishings and equipment. Subsequently, the Commissioner, for the same reasons as in 1974, again disallowed depreciation deductions, this time for the years 1972 through 1977.

The relevant portions of the original lease and the 1977 amendment (Hotel Lease Amendment No. 2) are as follows:

*Original Lease:*

7. (a) Landlord agrees at its cost and expense to construct on the demised premises a first class hotel of approximately 489 rooms, as described in the construction contract passed by act before the undersigned Notary Public of even date herewith between Landlord and Henry C. Beck Company, and costing not more than $16,000,000.

\*  \*  \*  \*  \*  \*

(c) The Landlord shall provide all furniture, appliances, linens, carpets, draperies, silverware, china, glassware, kitchen utensils, fixtures and movable equipment for the bars, kitchen, restaurants, butcher and bakery shops, pantries and other movable fixtures and equipment required for the operation of the hotel, (herein called "furnishings and equipment"), together with air conditioning, including refrigeration and kitchen air conditioning. The furnishings and equipment to be supplied and installed by Landlord shall be purchased by Landlord pursuant to the specifications of Tenant; such specifications shall be subject to the approval of Landlord, which approval Landlord agrees not to unreasonably withhold.

\* \* \* \* \* \*

8. Tenant shall at its own expense maintain all of the furnishings and equipment in first class condition, replacing the same when necessary for such purpose, (except where prevented from so doing by material or labor shortages, strikes, war restrictions or governmental restrictions), the cost whereof shall be deductible as an expense in computing Net Profit hereunder. All furnishings installed in the demised premises by Tenant, whether as replacements or additions, shall forthwith become the property of Landlord and a portion of the property leased to Tenant.

\* \* \* \* \* \*

12. (a) The Tenant will at all times keep and maintain the demised premises and all buildings and improvements at any time situated thereon in good rentable order and condition, reasonable wear and tear excepted, and shall take good care of the personal property used in connection with the operation thereof, renewing, repairing and supplementing the same as may be necessary in the proper conduct of the hotel (except where unavailable due to circumstances beyond the Tenant's control).

(b) During each period of three lease years during the original term only of this lease, Tenant covenants to expend upon the demised premises, the building and fixtures therein, and the furniture, furnishings, equipment, trade fixtures and other chattel property of every kind, nature and description located and used in the conduct of the hotel business therein, for repairs, decoration and redecoration, replacements, renewals, alterations, additions, and/or improvements, whether by way of capital improvements or otherwise, not less than the sum of $600,000.00, inclusive both of such expenditures through direct labor on Tenant's payroll for carpenters, masons, electricians and other craftsmen and employees, and of such expenditures made through independent contractors or subcontractors, and/or also through the purchase and acquisition of materials and of any such chattel property and installation thereof.

\* \* \* \* \* \*

26. Upon the termination or expiration of this lease, Tenant shall surrender to Landlord the demised premises in good condition and repair, ordinary wear and tear and injury by fire or other casualty or by acts of God excepted.

*Hotel Lease Amendment No. 2.*

WHEREAS, it has become apparent that certain changes should be made in the Lease so as to clarify the original intent of the parties,

NOW, THEREFORE, the parties agree that the Lease between them shall be and the same is hereby further amended as follows:

1. By providing that the furnishings and equipment provided by Landlord pursuant to the provisions of Paragraph (c) of Section 7 of the Lease shall be construed as a portion of the property leased by Landlord to Tenant.

2. By adding the following to Section 8 of the Lease:

"Tenant's obligation to maintain the furnishings and equipment shall be construed in accordance with the provisions of Articles 2719 and 2720 of the Revised Civil Code of Louisiana, except

only as modified by the obligations of the parties pursuant to Sections 21 and 22 of this Lease."

3. By adding to Section 26 of the Lease, following the words "the demised premises", the words "(including the furnishings and equipment)".

The government opposes plaintiff's motion on three grounds: (1) Hotel Lease Amendment No. 2, despite plaintiff's claim to the contrary, does not sufficiently clarify the lessor and lessee's supposed intention that the lessor is to be exposed to some economic loss; (2) in any event, the changes cannot retroactively control the years 1972 through 1976 since the amendment was executed in 1977; and (3) plaintiff is collaterally estopped from litigating in the present suit the same issues decided in the prior one.

Not surprisingly, the prior case involving a depreciation deduction for the hotel's furnishings and equipment is the closest both factually and legally to the instant situation. *Royal St. Louis, Inc. v. United States,* 578 F.2d 1017 (5th Cir.1978). That decision instructs us that in determining whether a lessor is entitled to a deduction representing depreciation, we must examine the lease to see if its terms place an obligation on the lessee which precludes economic loss to the lessor; "[i]f the lease does impose such an obligation, [the lessor is] not entitled to the ... deduction." *Id.* at 1019. As the Fifth Circuit noted, the key to that determination is the intent of the parties to the lease:

> A basic principle of contract law in Louisiana, as well as elsewhere, is that "contracts must be construed as a whole to determine the true intent of the parties." *Solomon v. Hickman,* 219 So.2d 330, 332 (La.App.1969). As the Court in *Solomon* further stated, "... all clauses of an agreement are to be interpreted in reference and relation to each other giving to each that meaning which results from the entire act." *Id.* at 333.

*Id.* at 1018. The court then proceeded to interpret various sections of the lease to demonstrate that the aim of the lease was to totally protect the lessor from loss:

These sections provide the critical evidence of the intent of the lessors and lessee with respect to the lessee's obligation to the lessors upon the expiration or termination of the lease.

A review of Sections 12(a) and 26 reveals that, with respect to the building and other realty comprising the hotel, the obligation of the lessee at the termination or expiration of the lease is expressly conditioned. *The lessee is only obligated to return such property to the lessors "in good condition ..., reasonable wear and tear excepted."*

*No such qualification appears with respect to the obligation regarding personalty. The omission of the "wear and tear" exception with respect to personalty, when compared to the inclusion of the "wear and tear" exception with respect to the realty, leads us to agree with the trial judge that such omission was intended.* We agree with the trial judge that, with respect to the furnished personal property, the intention of the parties to the lease was that the lessee's obligation would not be conditioned. *Lessee was obliged to maintain personalty in first class condition, whether or not a worse condition resulted from wear and tear. Section 8 requires the lessee to maintain that property in "first class condition."*

Other sections of the lease buttress the conclusion we reach. Section 7(a) required the lessors to construct a "first class hotel." Under well established principles of contract law, we must presume that the contracting parties intended that the same words appearing in different clauses be given a meaning consistent with each other. LSA–C.C. Arts. 1948, 1955; *Plantation Pipe Line Co. v. Kaiser Aluminum & Chemical Corp.,* 222 So.2d 905 (La.App.1969). The use of the words "first class" with respect to the construction of the hotel leads us to the conclusion that the parties intended the lessee to be furnished with a new, functional hotel, a structure which at its completion lacked any wear and tear, obsolescence or other economic loss. A similar interpretation

must be given to the words "first class condition" as it appears in Section 8.

Likewise, Section 12(a) states that the lessee "shall take good care of the personal property used in connection with the operation . . . [of the hotel], renewing, repairing, and supplementing the same as may be necessary in the proper conduct of the hotel . . . ." This obligation of the lessee to repair and replace is further delineated in Section 12(b) which requires the expenditure of specific amounts of funds, though such funds may also be expended on the buildings and the fixtures.

*Therefore, we conclude that the lease imposed upon the lessee the obligation to maintain the personal property so as to preclude economic loss by the lessors over the period of the lease. Having so held, the lessors are not entitled to the claimed depreciation deduction. Kem v. C.I.R., supra* [432 F.2d 961 (9th Cir.1970)].

*Id.* at 1019–20. (Emphasis added.)

The applicable legal principles being clear, the question remains as to whether the 1977 amendment changes this result. We conclude that it does.

The Fifth Circuit's major premise for denying depreciation was that the "wear and tear" exception was omitted with respect to furnishings, equipment and other personalty. The lease revision specifically amends Sections 8 and 26 to include this exception, with respect to Section 8, by incorporating Louisiana Civil Code Articles containing the "wear and tear" exception. However, the government argues that although these changes have occurred, the lessee's obligation to maintain the property in "first class condition" is still in the lease. In *Royal St. Louis,* the court did place great emphasis on the "first class" terminology but only because that absolute obligation was modified by a "wear and tear" exception for realty and not for movables; the omission of the "wear and tear" exception in Section 8 evidenced an intent to prevent *any* impairment of lessor's capital investment in the hotel's furnishings and equipment. Section 8 now contains a "wear and tear" exception.

With the 1977 changes, "[w]e find nothing in the [lease]", either explicitly or implicitly, "which obligates the [lessee] to return the property to the [lessor] in as good condition as when received or to pay a reasonable allowance for its exhaustion, wear and tear, and obsolescence . . ." *Gulf, M. & N.R. Co. v. Commissioner,* 83 F.2d 788, 791 (5th Cir.1936) The lease now clearly exposes the lessor to potential economic loss on the furnishings and equipment. Without the amendment, at the end of the lease (as interpreted in the prior tax case) lessor could have demanded that lessee return to it a new replacement item for each item furnished by lessor at the outset of the lease. Lessor no longer has that right; the items may be returned with "wear and tear". Therefore, lessor is entitled to the depreciation expense on these items as an income deduction.

A second contention of the government is that in no event can the 1977 amendment entitle the lessor to the depreciation deduction for prior tax years, relying particularly on *Noble v. Commissioner,* 368 F.2d 439 (9th Cir.1966). *See also United States v. Simon,* 281 F.2d 520 (6th Cir.1960). In *Noble,* the Commissioner disallowed certain deductions which were determined to be personal expenses of several shareholders. After the expenses were challenged by the Commissioner, the corporation's board of directors attempted to change the tax effect by adopting a resolution to re-characterize the expense. Obviously, such an attempt was not permitted to relate back. As the court stated in rejecting the taxpayer's appeal:

The question then arises whether after a determination that payments to the sole stockholders were for personal expenses, a subsequent act of the petitioners can convert what would then have been a taxable dividend into a repayment of a prior valid outstanding loan from the sole shareholders to the corporation.

Intention of the parties is not controlling.

368 F.2d at 443. *United States v. Simon, supra,* also involved a taxpayer's effort to

retroactively change the legal nature of an element of income.

Plaintiff's position is, quite simply, that there is no attempt in this case to apply the 1977 amendment retroactively. The amendment is not aimed at changing the legal character of the relationship between the parties; it clarifies their original intent and confirms how the parties have in fact conducted their activities under the lease.

In this circuit, as elsewhere, the concept that each tax year is a separate accounting entity "does not permit retroactive adjustments with the benefit of hindsight." *Brent v. Commissioner,* 630 F.2d 356, 361 (5th Cir.1980). But "subsequent events" may be considered insofar as they "throw light upon facts as existing during the tax year." *Sterling Distributors, Inc. v. United States,* 313 F.2d 803, 807 (5th Cir.1963). *See also Motor Fuel Carriers, Inc. v. Commissioner,* 559 F.2d 1348 (5th Cir.1977). Subsequent events are a particularly appropriate consideration when a court's decision hinges on the parties' intent. *See generally Motor Fuel Carriers, supra; McLemore v. Commissioner,* 32 T.C.M. 259 (1973), *aff'd,* 494 F.2d 1350 (6th Cir.1974); *Boshwit Brothers, Inc. v. Commissioner,* 43 T.C.M. 906 (1982). As the *McLemore* court explained: "Since intent is an intangible state of mind, we are required to examine all relevant circumstantial factors in order to determine the parties' true intent ..."

■ Unlike *Noble,* which specifically determined "intent" to be irrelevant, the central issue in the present case is what the parties intended by ambiguous lease terminology. There is no policy justification for this court to exercise "tunnel vision" and ignore the 1977 amendment when our only objective is to give effect to the parties intent. If a subsequent event, such as Hotel Lease Amendment No. 2, aids the court in this respect, it should be considered.

■ Finally, the government suggests that plaintiff is collaterally estopped from litigating this suit because the present action is simply a "relitigation" of the previous unsuccessful refund bid. We disagree.

The Fifth Circuit has defined the term "collateral estoppel" and has set out three stringent prerequisites for its use:

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). *See also James Talcott, Inc. v. Allahabad Bank, Ltd.,* 5 Cir., 1971, 444 F.2d 451, 458–459, in which we listed three traditional requirements for the application of the doctrine of collateral estoppel, none of which is present here: "(1) [T]he issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been 'actually litigated'; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Port Arthur Towing Co. v. Owens-Illinois, Inc.,* 492 F.2d 688, 692 n. 6 (5th Cir.1974). The government agrees that the concept has an even narrower application in the field of taxation. *See generally Stanback v. Commissioner,* 271 F.2d 514 (4th Cir. 1959).

The primary question, then, is whether the facts of the prior litigation differ in any material way from the present facts. Undeniably, a significant change in the form of Hotel Lease Amendment No. 2 has occurred. In fact, the change is so significant that, as noted above, it supports an opposite result from that reached in the previous litigation. Therefore, the "identical" issue was not "actually litigated" in the prior action.

There is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law.