Estate of Abraham L. Stoumen, Deceased, Mary Stoumen, Executrix v. Commissioner.
Estate of Abraham L. Stoumen v. Commissioner
Docket No. 26354.
United States Tax Court
1953 Tax Ct. Memo LEXIS 27; 12 T.C.M. (CCH) 1399; T.C.M. (RIA) 53399; December 10, 1953
*27 Jules I. Whitman, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and asserted fraud penalties against petitioner's decedent, Abraham L. Stoumen, as follows: Year
Deficiency
Penalty
1943
$60,123.46
$30,061.73
1944
68,540.04
34,270.02
1945
51,612.79
25,806.40
At the hearing no appearance was entered on behalf of petitioner whose counsel had appeared earlier at the call of the calendar and stated that he did not intend to contest the case for the deficiencies and would take no part in the proceedings insofar as it involved respondent's proof of fraud. Findings of Fact Petitioner Mary Stoumen is executrix of the estate of Abraham L. Stoumen, who died May 7, 1946. For the taxable years 1943, 1944, and 1945, petitioner's decedent filed his income tax returns with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. On January 1, 1943, the decedent and his brother, Bernard Stoumen, formed a partnership known as Fairplay Knitting Mills (hereinafter referred to as Fairplay), in which they continued as the sole and equal partners *28 throughout the taxable years involved. Fairplay, which filed its income tax returns on the accrual basis, engaged in the wholesale jobbing and manufacture of knitted sportswear in Philadelphia, Pennsylvania. Fairplay conducted its business by means of subcontractors who received yarn from Fairplay on consignment, then dyed it and manufactured the end product, charging Fairplay the contract price for the finished garment, including yarn and labor. Since Fairplay was credited with the amount of yarn forwarded on consignment, the balance remaining represented the labor cost, which was settled in cash. The decedent handled nearly all the business and financial affairs of the office, such as the billings, receipts, disbursements, and like matters. Samuel L. Schwartz, who was a brother-in-law of Bernard Stoumen, was Fairplay's purchasing agent. On February 23, 1943, and on May 7, 1943, at decedent's direction, Schwartz opened checking accounts in his individual name at the Corn Exchange Bank and Irving Trust Company, respectively, in New York City. Following the opening of these accounts, Fairplay continued to send its yarn to its subcontractors, but instead of sending its own invoices *29 which would offset the total amount of debit charges for the contract price the decedent caused the yarn invoices to be sent on invoices made out by "Samuel L. Schwartz Manufacturers' Agent." These invoices were then paid by the various contractors to Schwartz and deposited in the New York bank accounts in Schwartz's name. Fairplay then paid its bill in cash. The net effect of decedent's scheme was that in each instance Fairplay overstated its cost of goods manufactured by the amount of the Schwartz invoices, thereby reducing its gross profit since Fairplay did not thereafter report or account for the invoice payments. The distributive share of partnership profit reported by decedent and Bernard Stoumen was reduced accordingly. During the taxable years 1943, 1944, and 1945, sums totaling $409,669.78 were deposited in the New York City banks as follows: Corn Exchange
Irving
Year
Bank
Trust Co.
1943
$108,883.07
$26,578.84
1944
94,284.50
59,182.51
1945
96,847.34
23,893.52
The sources of the above deposits were: Abe Levine Knitting Mills, $322,753.11; Goodwear Knitting Mill, $47,785.01; Manchester, $4,725; Bell Garment, $10,127.08; D. P. McAlaine, *30 $12,163.32; Hamlin, $11,493.86; and unidentified, $622.40. These deposits were in the form of checks made payable to the order of Samuel L. Schwartz and were in payment of the invoices billed in Schwartz's name. The yarn and other merchandise billed on Schwartz's invoices were the merchandise of Fairplay and the deposits made in payment thereof were the property of Fairplay. Of the total sum of $409,669.78 thus deposited, approximately $268,000 was withdrawn in cash or unidentified checks. Approximately $80,000 was used to purchase United States bearer bonds, not registered in the name of any owner. All withdrawals were made at decedent's instructions and, whether in cash, check, or bonds, were turned over to him. Schwartz merely signed the withdrawal checks prepared by decedent. The sum of $6,205.27 was specifically traced as having been used by decedent for his own benefit. Of the specifically traceable 1945 withdrawals, $5,317.29 was used for the personal benefit of Bernard Stoumen. In the latter part of April 1946, Special Agent Cresson O. Davis, of the Bureau of Internal Revenue, who was in charge of the investigation of the tax liabilities of Fairplay, its partners, and *31 Schwartz, for the taxable years involved, advised decedent that Fairplay was under investigation. Decedent requested Special Agent Davis to return later in order to examine the partnership books. On May 6, 1946, decedent again asked for a delay in producing the records. On May 7, 1946, the decedent committed suicide, leaving three notes, one to Agents Davis and Fisher, one to Schwartz, and one to Bernard Stoumen, in each of which he admitted his fraudulent practices. On the evening before his death the decedent destroyed all the partnership books and records and all of Schwartz's personal records. Some twenty-eight suitcases full were thus destroyed. Neither the payments deposited in the New York bank accounts nor the accrual of the right to receive such payments were recorded on the partnership books of account. The partnership's income tax returns for the years involved herein were prepared on the basis of the partnership's books of account as summarized on its accountant's report. As a result of the failure of the partnership to record the foregoing transactions carried on by it in the name of Samuel L. Schwartz, the partnership in its income tax returns for the years 1943, *32 1944, and 1945, understated its gross income in the total amount of $409,669.78. The decedent understated his net income for the taxable years 1943, 1944, and 1945, in the amounts of $67,051.56, $75,966.17, and $59,157.08, respectively, by failing to report the full amount of his distributive share of the correct net income of said partnership. The understatements of income and the resultant deficiencies or part thereof were due to fraud with intent to evade tax in each of the taxable years involved. Opinion LEMIRE, Judge: Since the deficiencies in income tax determined by the respondent are conceded, the sole question presented is whether the respondent has sustained his burden of establishing that a part of the deficiency for each of the taxable years in question is due to fraud with intent to evade tax. Upon this record we are convinced that Abraham L. Stoumen, petitioner's decedent, through his active direction and control, engaged in a fraudulent scheme to reduce the amount of taxable net income of Fairplay Knitting Mills, a partnership in which he was equally engaged in business with his brother, Bernard Stoumen. The entire method involved, false bank accounts and *33 invoices in the name of Schwartz, a straw man controlled by decedent, decedent's destruction of all partnership records upon learning of the pending investigation, and his suicide notes and admissions of guilt therein, permits no other conclusion than that decedent fraudulently understated his net income for each of the taxable years with intent to evade tax. Since the additions to the tax for fraud are remedial, they survive the death of taxpayer and are enforceable against his estate. , affd. (C.A. 6). The 50 per cent addition to the tax for fraud for each of the taxable years involved is approved. Decision will be entered for the respondent.