Cornelius G. **NOBLE** and Pansy H. Noble, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 20379.

United States Court of Appeals Ninth Circuit.

Nov. 7, 1966.

Sherwood & Denslow Green, Madera, Cal., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Wm. Friedlandor, Lee A. Jackson, Harry Baum, Donald W. Williamson, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, HAMLEY, and CECIL,* Circuit Judges.

CECIL, Senior Circuit Judge.

This cause is before the Court on petition for review of a decision of the Tax Court which sustained the determi-

---

* Lester L. Cecil, Senior Circuit Judge, Sixth Circuit, sitting by designation.

nation of income tax deficiencies against the petitioners for the taxable years 1958, 1959 and 1960 in the respective amounts of $2,394.59, $3,716.74 and $4,395.27. Jurisdiction of this Court is invoked under Sections 7482 and 7483 of the Internal Revenue Codes.

Cornelius Noble and his wife Pansy Noble, petitioners herein, are the sole shareholders of a California corporation, known as Noble's Independent Meat Company (hereinafter referred to as the corporation). The corporation upon its organization in 1946 took over the meat packing business which the petitioners had theretofore operated as a sole proprietorship. The business of the corporation is conducted in the State of California where the petitioners reside.

In 1955 the petitioners, individually, loaned to the corporation the sum of $300,000 for the purpose of acquiring additional equipment and to meet operating expenses. The note evidencing the loan was secured by a Deed of Trust on corporate property. Under the terms of the loan agreement, the corporation would make 120 monthly payments of $1761.99 and would pay the balance on the 121st month. The payments were first to be applied to interest at 5¼ per cent per annum and then to the principal.

The corporation met all of the interest payments as they became due but was unable to meet all of the payments on the principal.

The deficiencies in question arose out of payments made by the corporation to the petitioners personally or for their benefit in the following amounts: 1958—$4353.78, 1959—$5353.42 and in 1960—$7869.30. These payments were for painting and repairs on the family residence, travel expense, summer residence expenses and other items of a personal nature. These items were charged on the books of the corporation as business expenses.

During the year 1962, the Internal Revenue Service conducted an examination of the corporation's books for its fiscal years ending March 31, 1958 through March 31, 1962, concurrently with the petitioners' returns for the years 1958, 1959 and 1960. While this examination was in progress, it became evident to petitioners that some of the payments made to them personally or for their benefit would be disallowed as business expenses. On May 15, 1962, the board of directors (consisting of the petitioners) of the corporation adopted a resolution[1] to the effect that the

---

1. "WHEREAS, an audit of the books and records of Noble's Independent Meat Company is presently being conducted by the United States Treasury Department, Internal Revenue Service; and

"WHEREAS, certain items of business expense as set forth in the corporate books are being disallowed; and

"WHEREAS, among said items are payments to or for the benefit of Cornelius C. Noble and Pansy H. Noble; and

"WHEREAS, at the time the payments were made it was considered by the corporation and Cornelius C. Noble and Pansy H. Noble that said expenditures were proper items of business expense; and

"WHEREAS, said items if finally disallowed by the Treasury Department, will not constitute proper items of business expense as shown on the books of said corporation; and

"WHEREAS, during the tax years ending on March 31, 1959, 1960 and 1961,

this corporation was indebted to Cornelius C. Noble and Pansy H. Noble in excess of $275,000.00; and

"WHEREAS, at the time that said disallowed expenditure items were paid it was not intended by this corporation to constitute payments for services rendered nor payments of dividends; and

"WHEREAS, Cornelius C. Noble and Pansy H. Noble have advised NOBLE'S INDEPENDENT MEAT COMPANY that to the extent that said items paid to them or for their account are finally disallowed as proper items of expense by said Treasury Department, that they desire said items to constitute repayment of a portion of the indebtedness due them from this corporation; and

"WHEREAS, this corporation concurs in said request and desires said disallowed items of business expense to constitute payment on said indebtedness;

"NOW, THEREFORE, BE IT RESOLVED that any and all disallowed

amount of any of the personal payments which were disallowed as business expenses would be credited to the obligation of the corporation on its $300,000 note.

In his report of October 12, 1962, the agent of the Internal Revenue Service disallowed the claimed deductions from the corporation's income in the amount of $17576.50, on the ground that they represented personal expenses of the petitioners. The petitioners received the notice of deficiency on February 18, 1963, in which it was determined that the above amount was a taxable dividend. The bookkeeping entry adjusting the corporation's books to reflect credit for the payment of $17576.50, as of May 15, 1962, on interest and principal of the note was made on March 31, 1964.

It was stipulated that at the times the amounts involved here were received by the petitioners or expended on their behalf they were deducted by the corporation as business expenses; that both the corporation and the petitioners intended that they constituted business expenses on the part of the corporation; and that it was not the intention of the petitioners or of the corporation that the payments should constitute salaries, dividends or repayment of the corporation's obligation to the petitioners. During the years in question, the corporation declared no formal dividends although there were profits from which dividends could have been paid.

The facts are not in dispute. They are based on the stipulation of facts by the parties and the uncontradicted testimony of petitioner Cornelius C. Noble. The question before us on this review arises out of conflicting interpretations of the facts.

It is the contention of the Commissioner that when the payments in question,

made to or on behalf of the petitioners by the corporation, were disallowed as business expenses of the corporation, they must be treated as constructive dividends from the corporation, and, as such, be taxed as personal income of the petitioners. On the other hand, the petitioners claim that so long as the corporation was justly indebted to them in amounts far in excess of the amount of the payments in question here and was delinquent in payments on the principal of the loan in excess of the amounts here involved, that the corporation and the petitioners are entitled to treat the payments, mistakenly made as business expenses, as a repayment of a portion of the indebtedness. Under such an interpretation of the facts the payments would not constitute dividend income and would not be taxable as personal income of the petitioners.

The Internal Revenue Code of 1954, Section 61 (Section 61, Title 26, U.S.C.), defines gross income as "all income from whatever source derived, including (but not limited to) the following items: * * * (7) dividends, * * * *". Section 316(a) (Section 316(a), Title 26, U.S.C.), defines a dividend as "any distribution of property made by a corporation to its shareholders—(1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year * * *."[2]

■■ Dividends may be formally declared or they may be constructive. The fact that no dividends are formally declared does not foreclose the finding of a dividend-in-fact. Clark v. C. I. R., 9 Cir., 266 F.2d 698; Biltmore Homes, Inc. v. C. I. R., 4 Cir., 288 F.2d 336, cert. den. 368 U.S. 825, 82 S.Ct. 46, 7 L.Ed. 2d 30; Whitfield v. C. I. R., 5 Cir., 311 F.2d 640; Chism's Estate v. C. I. R., 9 Cir., 322 F.2d 956.

business expense items of Noble's Independent Meat Company which were paid to or for the benefit of Cornelius C. Noble and Pansy H. Noble, be deemed to be payment on account of the indebtedness of this corporation to Cornelius

C. Noble and Pansy H. Noble, and that this corporation shall receive credit therefor."

2. It is undisputed that there were sufficient corporate earnings and profits to cover the amount in question.

"The crucial concept in a finding that there is a constructive dividend is that the corporation has conferred a benefit on the stockholder in order to distribute available earnings and profits without expectation of repayment." 1 Mertens, Law of Federal Income Taxation, Section 9.07. See also Healy v. Commissioner, 345 U.S. 278, 281, 73 S.Ct. 671, 97 L.Ed. 1007; Clark v. C. I. R., supra, 266 F.2d p. 711; Cummins Diesel Sales of Oregon, Inc. v. United States, 9 Cir., 321 F.2d 503.

Clearly, the payments in question here are of the type that would fall in the category of constructive dividends. Likewise, it is equally clear that the payments would have constituted payments on the loan if the petitioners had designated them for that purpose at the time they were made. Dawkins v. Commissioner of Internal Revenue, 8 Cir., 238 F.2d 174; Bailey v. Commissioner of Internal Revenue, 5 Cir., 103 F.2d 448. The question then arises whether after a determination that payments to the sole stockholders were for personal expenses, a subsequent act of the petitioners can convert what would then have been a taxable dividend into a repayment of a prior valid outstanding loan from the sole shareholders to the corporation.

Intention of the parties is not controlling. The fact, as stipulated by the parties, that the corporation and the petitioners did not intend these payments to constitute dividends, is not decisive. We said in Clark v. C. I. R., supra, 266 F.2d p. 711,

"To constitute a distribution taxable as a dividend, the benefit received by the shareholder need not be considered as a dividend either by the corporation or its shareholders, declared by the board of directors, nor other formalities of a dividend declaration need be observed, if on all the evidence there is a distribution of available earnings or profits under a claim of right or without any expectation of repayment." Healy v. Commissioner, supra; Biltmore Homes, Inc. v. C. I. R., supra.

The declared expression of an individual's intent is not binding upon the Commissioner. The Commissioner and the reviewing courts are permitted to fully examine any transaction to determine its economic and financial reality. Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; C. I. R. v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360; Hatch's Estate v. Commissioner, 9 Cir., 198 F.2d 26; Anderson v. United States, 9 Cir., 232 F.2d 794; Clark v. C. I. R., supra. Even an honestly held belief or expression of intention does not immunize a transaction from the scrutiny of the Commissioner. Lengsfield v. Commissioner of Internal Revenue, 5 Cir., 241 F.2d 508; Earle v. Woodlaw, 9 Cir., 245 F.2d 119, cert. den. 354 U.S. 942, 77 S.Ct. 1400, 1 L.Ed.2d 1537; Sachs v. C. I. R., 8 Cir., 277 F.2d 879, cert. den. 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59.

In the case at bar, it is stipulated that the taxpayers made a valid loan to the corporation in 1955 and that the $17,576.50 received by the Nobles was due to a mistake regarding the nature of expenses they incurred. Inasmuch as it is agreed that the expenses for which they were reimbursed were personal in nature, and not connected with the corporate business, the moneys they received were dividends and should have been included in their tax returns. American Properties Inc. v. Commissioner of Internal Revenue, 9 Cir., 262 F.2d 150; Clark v. C. I. R., supra; Cummins Diesel Sales of Oregon, Inc. v. United States, supra.

Petitioners argue against this result by stating that when they learned that they were mistaken about the nature of the reimbursed expenditures, the corporation adopted a resolution which credited the $17,576.50 against the debt owed to the Nobles. However, it is stipulated that at the time payments were made to the Nobles, they were not considered as payments on the loan. It was not until March 31, 1964, four years after the

Nobles received this money, that the books of the corporation were adjusted to reflect the fact that the $17,576.50 was considered as payment on the loan. The resolution which formed the basis of this action was adopted in May 1962, at least two years after the reimbursement. It is these subsequent events which the taxpayers allege prevent this sum from being considered dividends and income.

The federal income tax program is based on a system of annual reporting. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Under this system, an individual's income tax return is supposed to reflect all income activity of the one reporting year. If one year's income could be changed by events occurring in subsequent years, there would never be any finality in the system. United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, rehearing den. 341 U.S. 923, 71 S.Ct. 741, 95 L.Ed. 1356; United States v. Lesoine, 9 Cir., 203 F.2d 123; Phillips v. C. I. R., 9 Cir., 262 F.2d 668. Returns could be reopened and altered, to the confusion of fiscal policy and revenue collection. Thus, the present scheme of providing finality for each reporting period, would be violated were the taxpayers permitted to alter the effects of earlier income periods by their subsequent acts. Phillips v. C. I. R., supra; United States v. Simon, 6 Cir., 281 F.2d 520; Crellin's Estate v. Commissioner of Internal Revenue, 9 Cir., 203 F.2d 812, cert. den. 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381; Leicht v. Commissioner of Internal Revenue, 8 Cir., 137 F.2d 433. To permit otherwise would allow the taxpayer to "second-guess" the government in instances where more than one treatment of a transaction is possible, "And, it is not given to a taxpayer to lift the federal tax-hand from income, which he once received in absolute right, by an attempt thereafter to alter its legal status through modification of the agreement out of which it arose." Leicht v. Commissioner of Internal Revenue, supra, p. 435.

Contrary to the claim of petitioners, the Commissioner did not base his determination on the form of the payments. He determined, as a matter of substance, that when the payments were disallowed as corporation expenses, they constituted constructive dividends. Petitioners' reliance on Section 1479 of the California Civil Code is not pertinent to the issue now before us. It is inapplicable to the question here of whether the payments represented dividend distributions for federal income tax purposes.

Petitioners cite Garden State Developers, Inc. v. Commissioner, 30 T.C. 135, as being more closely in point on the question of repayment of debts versus constructive dividends. Neither this case nor Walter M. Beckley v. Commissioner, 12 T.C.M. 1399 (1953), require a reversal of the decision of the Tax Court as claimed by petitioners. These cases do not stand for the proposition that there can be no dividend where an outstanding obligation exists from the corporation to the shareholders. These cases apply to the particular factual situations involved. In *Beckley,* the taxpayer was uneducated in matters of business and did not differentiate between his and the corporation's funds. When the books of both Beckley and the corporation were correctly audited, it was determined that diversions of corporate revenue were to be credited against a valid debt owed to the taxpayer. The Tax Court affirmed this audit to do justice in favor of a poorly educated taxpayer who treated his and the corporate assets as one. In *Garden State Developers, Inc.,* the only way taxpayers could acquire certain land was to purchase the stock of the corporation possessing the contract to purchase it. The taxpayers lent money to the corporation, which money the corporation used to satisfy the debts of the taxpayers incurred in purchasing the stocks. The Tax Court held that corporate payments in satisfaction of these obligations did not amount to constructive dividends to the taxpayers, because, if it were so held, it would

amount to taxing as dividends the very money that the taxpayers lent to the corporation to pay these very debts. The payments were treated as repayments of the loan. Neither *Beckley* nor *Garden State* present the issue involved herein, and are not determinative of it. In the case at bar there was no relation whatever between the amounts loaned by the petitioners to the corporation and the amounts paid out by the corporation for the benefit of the petitioners as there was in *Garden State*.

There is no merit to petitioners' claim of double taxation. It is a part of the federal system of corporate and individual taxation that a corporation is taxed 52 per cent of its earnings and profits and that the shareholders must pay tax on the dividends they receive as a part of their total annual income. The fact that petitioners were in a 55, 69 and 56 per cent bracket, respectively, for the years 1958, 1959 and 1960, is not material to the issue here. They were not subjected to double taxation any more than shareholders of corporations are generally. The corporation is a separate entity even though the petitioners are the sole stockholders. They apparently considered that there was some benefit in doing business through a corporation. They must accept the liabilities as well as the benefits.

We find no merit to petitioners' argument that their acts, in the years subsequent to the year in which the payments were made, did not create a new legal relationship. Their attempt to distinguish United States v. Simon, supra, and Crellin's Estate v. Commissioner, supra, on the basis that in those cases there were new legal relationships is not valid.

The scope of our review is limited to a determination of whether the finding of facts and inferences drawn therefrom by the Tax Court are clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure. This rule applies to factual inferences from undisputed facts. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. We conclude that the decision of the Tax Court, as to its findings of fact and the conclusions drawn therefrom, is not only not clearly erroneous but that it is correct. The trial judge correctly applied the relevant law to the facts and the decision of the Tax Court is therefore affirmed.