T.C. Memo. 1997-371


UNITED STATES TAX COURT


WILLIAM L. MCCURLEY AND VICTORIA J. MCCURLEY, ET AL.,[1]
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10499-94, 10500-94          Filed August 14, 1997.
          6557-95.


Joseph Warren III and C. Ralph Kinsey, Jr., for

petitioners.

     Ross A. Rowley and Paul G. Topolka, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


---

     [1]  Cases of the following petitioners are consolidated
herewith:  Robert D. Hall and Gayle E. Hall, docket No. 10500-94;
William L. McCurley and Victoria J. McCurley, docket No. 6557-95.

FOLEY, Judge: Respondent determined the following deficiencies, addition to tax, and accuracy-related penalties relating to petitioners' Federal income taxes:

William L. McCurley and Victoria J. McCurley, docket No. 10499-94

| Year | Deficiency | Addition to Tax Sec. 6661 |
|------|-----------|-------------------|
| 1988 | $43,612 | $10,903 |
| 1989 | 9,900 | -- |
| 1990 | 5,600 | -- |

Robert D. Hall and Gayle E. Hall, docket No. 10500-94

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-----------|
| 1989 | $11,247 | $2,249 |
| 1990 | 11,200 | 2,240 |
| 1991 | 18,468 | 3,694 |

William L. McCurley and Victoria J. McCurley, docket No. 6557-95

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-----------|
| 1991 | $12,664 | $2,533 |
| 1992 | 4,473 | 895 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

The issues for decision are as follows:

1. Whether certain payments made by a corporation to petitioners are loans or constructive dividends. We hold that they are constructive dividends.

2. Whether petitioners, pursuant to section 6662(a), are liable for accuracy-related penalties for negligence in the

amounts and for the years set forth above.  We hold that they are liable with one exception stated herein.

3.  Whether petitioners William and Victoria McCurley, pursuant to section 6661(a), are liable for an addition to tax for a substantial understatement with respect to their 1988 return.  We hold that they are liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. William and Victoria McCurley, husband and wife, resided in Kennewick, Washington, at the time their petitions were filed. Robert and Gayle Hall, husband and wife, resided in Yakima, Washington, at the time their petition was filed.  Messrs. McCurley and Hall each owned automobile dealerships at all relevant times.  Mr. McCurley owned 100 percent of Bill McCurley Chevrolet, Inc., and McCurley Pontiac, Inc.  Mr. Hall owned 100 percent of Sunfair Chevrolet, Inc., and 75 percent of Greenway Auto Plaza, Inc.

Each dealership offered financing to prospective customers. The dealership, as an agent for an insurance company, offered credit life and/or credit health insurance policies to customers who financed their purchases through the dealership.  The dealership retained as compensation a portion of the premium due. The policies provided that the insurer would make payments on the dealership loan in the event the insured became disabled and

would repay the balance outstanding on the loan in the event the insured died.

Southwestern Dealers Insurance Co. (SDI) was formed by a group of automobile dealership owners whose dealerships issued policies similar to those issued through Messrs. McCurley's and Hall's dealerships. In February of 1982, SDI was incorporated in Grand Cayman under the laws of the Cayman Islands, British West Indies. Mr. McCurley became an SDI shareholder in 1982 and served as chairman of SDI's board of directors from that year forward. Mr. Hall became an SDI shareholder in 1984. Prior to becoming shareholders, Messrs. McCurley and Hall reviewed letters prepared by Peat, Marwick, Mitchell & Co., outlining issues relating to the formation of SDI and the availability of interest-free loans. The letter cautioned that adverse tax consequences would result if the loans were not bona fide loans.

SDI reinsured credit insurance policies issued through dealerships (i.e., the dealerships served as agents of the insurance companies) owned by SDI shareholders. As described below, reinsurance profits from policies attributable to a particular shareholder's dealership were then allocated to that shareholder. Seventy-five percent of the allocated profits was readily accessible to the shareholder through interest-free loans.

SDI's articles of association (Articles) set forth the rules governing the corporation. They authorized the issuance of

ordinary shares, which carried one vote per share, and preferred shares, which carried no voting rights. During the relevant years, SDI had between 16 and 24 shareholders and each held one ordinary share and 340 preferred shares.

SDI maintained a redemption account for each shareholder. Pursuant to the Articles, the amount of a shareholder's redemption account: (1) Represented the price at which SDI would redeem that shareholder's preferred shares, (2) formed a basis for allocating dividends to that shareholder, and (3) served as a point of reference for determining the maximum amount of funds that SDI could advance that shareholder.

Preferred shares were redeemable for a price based on a formula. The formula provided that preferred shares could be redeemed for an amount equal to (1) the shareholder's capital contributions and share of SDI's profits (e.g., profits attributable to policies issued by the shareholder's dealerships) and investment income, less (2) his share of SDI's losses and dividends paid with respect to the shares. Negative redemption accounts reduced other redemption accounts pro rata.

SDI did not pay dividends. It did, however, advance interest-free funds to its shareholders. The Articles authorized the board to approve an advance to a shareholder if such advance and all previous advances for that shareholder did not exceed 75 percent of that shareholder's redemption account. If a shareholder's redemption account declined in value such that the

total advances to the shareholder exceeded 75 percent of his redemption account, the board of directors would demand repayment to the extent of the excess. The board demanded repayment of two of the more than 70 advances to shareholders. In each case, repayment was demanded because, after a decline in the value of the shareholder's redemption account, advances to the shareholder exceeded 75 percent of the account.

All advances were recorded on SDI's certified financial statements as loans receivable. To obtain an advance, a shareholder was required to execute an application. The applications generally stated the amount of the advance requested and provided that: (1) No interest would accrue; (2) the board would demand repayment if the shareholder's total advances exceeded 75 percent of that shareholder's redemption account; and (3) the shareholder's redemption account could be used to satisfy any outstanding advances. These applications were routinely approved by SDI's board of directors. SDI denied only two applications. These applications were denied because the future profitability of the respective applicant's redemption account was questionable.

SDI advanced funds to Messrs. McCurley and Hall. Each time Messrs. McCurley and Hall requested funds, they executed an application and submitted it to SDI's board of directors. The board approved, by resolution, each advance. Messrs. McCurley and Hall each tendered noninterest-bearing demand notes in the

amount of the funds received.  During the years in issue, SDI advanced a total of $275,661 to Mr. McCurley and $138,596 to Mr. Hall.  SDI did not demand repayment of, and Messrs. McCurley and Hall did not repay, any of the advances.

During the years in issue, the McCurleys and Halls filed joint Federal income tax returns.  On those returns, they did not report their advances from SDI as income.  For each of the years in issue, certified public accountants prepared the McCurleys' and Halls' tax returns.

Respondent issued notices of deficiency to the McCurleys relating to their 1988, 1989, 1990, 1991, and 1992 returns. Respondent also issued a notice of deficiency to the Halls relating to their 1989, 1990, and 1991 returns.  Respondent determined that Messrs. McCurley and Hall had income equal to the amounts SDI advanced to them.  In the alternative, respondent determined that 75 percent of the annual increases in Messrs. McCurley's and Hall's redemption accounts was taxable to them as income constructively received.  For the McCurleys' 1992 tax year, respondent determined a deficiency based solely on the constructive receipt theory.  Respondent concedes that if we conclude petitioners received income when advances were made to them, there will be no deficiency in the McCurleys' 1992 income tax.  Respondent also determined an addition to tax and accuracy-related penalties.

OPINION

I.  Constructive Dividends

A distribution of cash or property from a foreign corporation to a domestic shareholder with respect to the corporation's stock generally is, to the extent of the corporation's earnings and profits, taxable to the shareholder as a dividend.  See secs. 301(c), 316(a); sec. 1.316-1(a)(1), Income Tax Regs.  Petitioners do not dispute that SDI had earnings and profits in excess of the amounts paid to Messrs. McCurley and Hall.

A dividend need not be formally declared, but may be constructive.  Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), affg. T.C. Memo. 1965-84.  Whether a distribution from a corporation to a shareholder constitutes a dividend or a loan depends on whether the corporation has conferred a benefit on the shareholder without the expectation of repayment.  See, e.g., Noble v. Commissioner, supra at 443; Chism's Estate v. Commissioner, 322 F.2d 956, 959-960 (9th Cir. 1963), affg. Chism Ice Cream Co. v. Commissioner, T.C. Memo. 1962-6.  A purported loan from a corporation to a shareholder will not be characterized as a loan unless, at the time the funds were transferred, the transferee had an unconditional obligation to repay the funds, and the transferor had an unconditional intention to secure repayment.  Haag v. Commissioner, 88 T.C. 604, 615-616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988).  This determination is to be made based on all

of the facts and circumstances of the case.  Chism's Estate v. Commissioner, supra at 960.  Petitioners bear the burden of proving that the advances were bona fide loans.  Welch v. Helvering, 290 U.S. 111, 115 (1933).  After considering all of the facts and circumstances, we conclude that the advances were constructive dividends to Messrs. McCurley and Hall.

Several factors support our conclusion.  First, SDI never paid formal dividends to its shareholders.  Second, petitioners did not establish that SDI demanded, or that Messrs. McCurley or Hall volunteered, repayment of the advances.  See Georgiou v. Commissioner, T.C. Memo. 1995-546 (stating that the failure to repay a steadily increasing loan balance is indicative of constructive dividends); Baird v. Commissioner, T.C. Memo. 1982-220 (same).  Third, the advances did not bear interest.  Fourth, the advances to Messrs. McCurley and Hall were expressly made with reference to their redemption accounts (i.e., their share of SDI's profits).  Fifth, the advances were not repayable at a fixed maturity date, but rather were repayable on demand.  Sixth, out of more than 70 advances made to shareholders, SDI demanded repayment of only two.  Moreover, the repayments were demanded solely because the respective shareholder's advances exceeded 75 percent of his redemption account.

In essence, SDI was designed and intended to capture each shareholder's insurance-related profits and to provide the

shareholder with tax-free and interest-free access to profits attributable to policies issued through the shareholder's dealership. Messrs. McCurley and Hall would not repay their advances unless it was in their economic interests to do so. Petitioners have not persuaded us that it would ever be in their economic interests to repay these advances. Mr. McCurley, Mr. Hall, and SDI viewed the advances as permanent distributions with the understanding that there was a remote possibility that SDI would demand repayment. Accordingly, we hold that the advances to Messrs. McCurley and Hall were constructive dividends.

## II. Penalties and Addition to Tax

### A. Section 6662 Penalties for Negligence

Section 6662(a), applicable to the McCurleys' 1991 and 1992 tax years and the Halls' 1989, 1990, and 1991 tax years, provides for an accuracy-related penalty equal to 20 percent of the portion of any underpayment to which the section applies. The section applies to, among other items, the portion of an underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). It includes the failure to make a reasonable attempt to comply with the Internal Revenue Code. Sec. 6662(c). Section 6664(c) states that the accuracy-related penalty for negligence does not apply to any

portion of an underpayment attributable to reasonable cause. Reasonable reliance on the advice of a tax professional may constitute reasonable cause. Sec. 1.6664-4(b), Income Tax Regs.

Petitioners contend that they exercised due care in reporting the advances as loans. Petitioners also contend that they reasonably relied on professional advice and that, as a result, their underpayments were attributable to reasonable cause. Messrs. McCurley and Hall did not unconditionally intend to repay the advances, and they knew or reasonably should have known that there was only a remote possibility that SDI would demand repayment of their advances. As a result, we reject petitioners' contentions and hold that they are liable for the accuracy-related penalties for negligence. Because we have held that the McCurleys did not understate their income in 1992, however, they are not liable for the negligence penalty for that year.

B.  Section 6661 Addition to Tax for Substantial Understatement

Section 6661(a), applicable to the McCurleys' 1988 tax year, provides for an addition to tax equal to 25 percent of the amount of an underpayment attributable to a substantial understatement. See Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). The term "understatement" means the excess of (1) the amount of tax required to be shown on the return over (2) the amount of tax shown on the return, reduced by any rebate. Sec. 6661(b)(2)(A).

Section 6661(b)(2)(B) provides that the understatement determined under section 6661(b)(2)(A) must be reduced by the portion of the understatement for which the taxpayer had "substantial authority".  A taxpayer has substantial authority where the weight of the authorities supporting the taxpayer's position is substantial in relation to the weight of authorities supporting contrary positions.  Sec. 1.6661-3(b)(1), Income Tax Regs.

The McCurleys contend that they have not understated their income within the meaning of section 6661, because they had substantial authority for characterizing the advances as loans.  They contend that four cases support treatment of the advances as loans.  See Pierce v. Commissioner, 61 T.C. 424 (1974); White v. Commissioner, 17 T.C. 1562 (1952); Wiese v. Commissioner, 35 B.T.A. 701 (1937), affd. 93 F.2d 921 (8th Cir. 1938); Miller v. Commissioner, T.C. Memo. 1980-445.  None of these cases, however, explicitly or implicitly provides that where a taxpayer does not intend to repay an advance he is nevertheless justified in reporting it as a loan.  As a result, we reject their contention.

The McCurleys also contend that the understatement was due to reasonable cause and that, as a result, respondent should have waived the penalty.  See sec. 6661(c).  The standard of our review is whether the Commissioner's failure to waive the penalty was an abuse of discretion.  Mailman v. Commissioner, 91 T.C. 1079 (1988).  The McCurleys knew or should have known that the advances were not bona fide loans.  Therefore, their

understatements were not due to reasonable cause.  As a result, there was no abuse of discretion by respondent.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.