T.C. Memo. 2010-173

UNITED STATES TAX COURT

R.V.J. CEZAR CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RESTITUTO T. AND VIRGENCITA P. CEZAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 30125-08, 30144-08.  Filed August 4, 2010.

<u>Marc Paul Jacobs</u>, for petitioners.

<u>Steven M. Roth</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $190,093 deficiency in Restituto T. and Virgencita P. Cezar's (petitioners) individual Federal income tax as well as a $130,408 deficiency in the Federal income tax of petitioners' wholly owned corporation,

R.V.J. Cezar Corporation (the corporation) for 2004.  Respondent also determined petitioners and the corporation were liable for accuracy-related penalties of $38,018 and $27,192, respectively.

After concessions, we must decide five issues.  First, we must decide whether the corporation's distribution of improvements on a corporate-owned lot to petitioners is taxable as a constructive dividend to petitioners.  We find that it is.  The second issue is whether the corporation recognized income by distributing the improvements to petitioners, the corporation's sole shareholders.  We hold that the corporation recognized the income.  We also must decide whether petitioners as well as the corporation are liable for the accuracy-related penalty for 2004.  We hold that they each are liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners resided in Santa Barbara, California, at the time they filed the petition.  The corporation's headquarters was in Santa Barbara, California, at the time it filed the petition.

I.  Background on Petitioners and the Corporation

Mr. Cezar was trained and worked as an engineer in the Phillippines and American Samoa before moving to the United States.  He moved his family to the United States so his disabled

son could enroll in special education classes.  Mr. Cezar obtained a contractor's license after moving to California in 1991.  He purchased a construction corporation from a contractor who was leaving the industry and began operating the corporation under the name R.V.J. Cezar Corporation in 1996.

The corporation built "spec" houses[1] that it sold to the public.  The corporation paid the construction costs with construction loans in the corporation's name.  The corporation owned each spec house it built and reported any sales of the houses on the corporate income tax returns.

Petitioners were sole shareholders in the corporation during 2004.  They paid $500 for their stock.  Mr. Cezar, a general contractor, was the sole employee of the corporation and he received wages from the corporation in 2004.

## II.  The 604 Farrell Drive Property

The corporation purchased a lot at 604 Farrell Drive (the lot) in 2001.  The corporation financed part of the $150,000 purchase price for the lot with a mortgage.

The corporation obtained a permit to begin construction of a 4,000 square foot spec home on the lot in 2003.  Mr. Cezar prepared the blueprints and oversaw the construction.  The spec home at 604 Farrell Drive is approximately twice the size of the

---

[1]A "spec" house is a house constructed by a builder to the builder's specifications with the intention of selling it at a profit upon completion.

corporation's other spec homes and includes "upgrades" such as granite countertops, central vacuum and carpeted bedrooms. The backyard has a jacuzzi tub, surround sound, and tile walkways.

The corporation is listed as the sole owner of the spec home on the blueprints, the permit and the notice of completion. Nothing on the blueprints, the permit or the completion notice indicates that the improvements were constructed through a joint venture between petitioners and the corporation or that the corporation permitted petitioners to construct the home on the corporate-owned lot. At no time did the corporation or petitioners ever notify the Santa Barbara County Assessor's Office (Assessor's Office) that petitioners rather than the corporation owned the improvements. The Assessor's Office did not assign the improvements a separate parcel number from the lot. The Assessor's Office sent one tax bill for the lot and the improvements, rather than two separate unsecured bills, to the corporation as the record owner. The corporation did not object that it had been billed for improvements that it did not own nor that the lot and the improvements were separately owned.

The corporation submitted construction cost estimates to the Assessor's Office but did not maintain any receipts or invoices to substantiate the costs. The parties agree that construction costs were $502,000. Petitioners did not produce any records or otherwise demonstrate that they paid any of the construction

costs.  Some construction materials were purchased with credit cards issued in both Mr. Cezar's name and the name of the corporation.  Petitioners failed to provide any documentation as to who paid the credit card bills.  Petitioners were only able to produce credit card statements for a year after construction was completed.

Petitioners were unable to document most of the labor costs of constructing the home.  Petitioners did not include any "sweat equity" from the corporation in income for any construction labor they may have done themselves or with the help of their sons, nor did they provide testimony from their sons.  Mr. Cezar hired some laborers for the construction but many of the laborers were paid in cash and no records exist.  Mr. Cezar did not maintain any record of whom he hired, what they did, how much he paid them or whether he paid them with his own funds.  In addition, many of the labor costs Mr. Cezar documented were incurred after the construction was completed.

Construction of the improvements was completed in June 2004.  The corporation offered both the lot and the improvements for sale during the summer of 2004 but did not receive any purchase offers.  There was no transfer of interest between petitioners and the corporation until the corporation transferred the lot and improvements to petitioners by quitclaim deed four months later.  Petitioners assumed the outstanding mortgage of $57,227.  The lot

and the improvements had a total fair market value of $920,000 at the time of transfer. The corporation filed a transfer of ownership report with the Assessor's Office. The ownership report did not indicate that the property interest transferred to petitioners was a partial interest.

Petitioners did not report the receipt of the lot or the improvements on their return for 2004, nor did the corporation report the distribution of the lot and the improvements on the corporate return for 2004.

III.  The Deficiency Notices for 2004

Respondent examined petitioners' individual return and the corporation's corporate return for 2004. Mr. Cezar stated repeatedly during the audit that the improvements and the lot were corporate assets.

Respondent issued a deficiency notice to petitioners determining that the distribution of the lot and the improvements was a constructive dividend from the corporation.[2] Respondent determined petitioners received a qualified dividend up to the amount of earnings and profits of the corporation. Respondent also determined that petitioners received the remainder of the distribution, less their $500 initial capital contribution, as long-term capital gain. Respondent also determined petitioners

_____

[2]The deficiency notices issued to petitioners and the corporation determined other issues now conceded.

were liable for the accuracy-related penalty.  Petitioners timely filed a petition.

Respondent also issued a deficiency notice to the corporation determining an increase in gross income due to the distribution of the lot and the improvements to petitioners. Respondent also determined the corporation was liable for the accuracy-related penalty.  The corporation timely filed a petition.

OPINION

We must now determine whether the corporation's distribution of improvements on a corporate-owned lot is taxable to petitioners as a constructive dividend.  Petitioners concede they received the lot as a constructive dividend but argue that they did not receive the improvements as a constructive dividend because they "owned" the improvements.[3]  We must also determine the tax consequences to the corporation in a closely held situation as here where neither petitioners nor the corporation kept adequate records.  We must also decide whether petitioners and the corporation are each liable for the accuracy-related penalty for failing to maintain adequate records and failing to properly report the distribution.  We address each of these issues in turn.

---

[3]Ownership of the improvements is not necessarily acquired by paying for the materials or even providing the labor.

I.  The Constructive Dividend to Petitioners From the Corporation

We begin with the general rules for taxability of dividends. A dividend is a distribution of property from a corporation to its shareholders out of the corporation's earnings and profits. Sec. 316(a).[4]  The amount of the distribution equals the fair market value of the distributed property on the date of distribution.  Sec. 301(b)(1)(A), (3); Schrott v. Commissioner, T.C. Memo. 1989-346.  Any portion of a distribution that is a dividend is taxable to the recipient as ordinary income.  Secs. 61(a)(7), 301(c), 316(a).  The amount of the distribution that exceeds earnings and profits, and is therefore not a dividend, is taxable capital gain to the recipient.  See sec. 301(c)(3).

Dividends may be formally declared or they may be constructive, and the corporation's intent is not determinative. See Roy v. Commissioner, T.C. Memo. 1997-562, affd. without published opinion 182 F.3d 927 (9th Cir. 1999); Noble v. Commissioner, T.C. Memo. 1965-84, affd. 368 F.2d 439 (9th Cir. 1966).  A constructive dividend arises when a corporation confers a benefit on a shareholder by distributing available earnings and profits without expectation of repayment.  Noble v. Commissioner, supra.  The classification of a distribution as a constructive dividend is a question of fact.  Loftin & Woodard, Inc. v. United

---

[4]All section references are to the Internal Revenue Code and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

States, 577 F.2d 1206, 1215 (5th Cir. 1978). There is a greater potential for a constructive dividend with closely held corporations where dealings between shareholders and the corporation are commonly characterized by informality. Zhadanov v. Commissioner, T.C. Memo. 2002-104. Petitioners bear the burden of proving that respondent's determination of a constructive dividend is erroneous. See Rule 142(a).

Petitioners concede that they received the lot as a constructive dividend from the corporation. They argue, however, that the improvements were not a constructive dividend because they owned the improvements by having paid for the construction materials and having done all the work to construct the improvements. We are not persuaded that petitioners owned the improvements. They conceded that the corporation owned the lot on which the improvements were built. As respondent points out, it is axiomatic that improvements are built on land that one owns or else there would be an agreement identifying the rights and responsibilities of the parties. We agree. Petitioners failed to provide any authority to support the argument that the lot and the improvements were separately owned. They have not shown that there was an agreement between them and the corporation that would have allowed them to construct a home on the corporation's property. Their ownership argument also is directly contradicted

by Mr. Cezar's statements during the audit that the lot and the improvements were both corporate assets.

Moreover, petitioners did not present any credible evidence to support their claim that they owned the improvements by paying the construction costs and personally completing the labor. The only evidence petitioners presented of having completed the construction labor was Mr. Cezar's self-serving testimony, which we are not required to accept, and which we do not, in fact, find credible. See Niedringhaus v. Commissioner, 99 T.C. 202, 219 (1992). Neither petitioners nor the corporation kept adequate records. The store account and the credit card statements they did provide do not establish that petitioners were separate from the corporation. The statements were for credit cards and accounts jointly held by Mr. Cezar and the corporation, and petitioners did not produce any cancelled checks or receipts to establish who paid the bills. The only records petitioners produced to establish that they paid the construction costs were insufficient. Moreover, the statements were for periods after the improvements were built.

Furthermore, the record reflects that the corporation was the sole owner of the lot as well as the improvements from the start of construction until the distribution to petitioners. The corporation is listed as the sole record owner of the lot and the improvements on the blueprints, the permit, and the notice of

completion.  The corporation received property tax bills for both the lot and the improvements and did not protest that it had been billed for improvements that it did not own.  We also find it compelling that the corporation, which is in the business of building and selling homes, offered the lot and the improvements for sale without obtaining any transfer of interest from petitioners.  No prospective buyer would buy only the improvements and not the lot or vice versa.  Equally compelling, we note that no other spec home that the corporation sold before or since was owned by petitioners individually.  Rather, all the homes and lots were owned and offered for sale by the corporation.

Accordingly, we find that petitioners have not established that they owned the improvements.  We therefore sustain respondent's determination that petitioners must include the distribution of the lot and the improvements in gross income as a constructive dividend from the corporation.[5]

## II.  The Corporation's Recognition of Income

We now turn to the tax consequences to the corporation of the constructive dividend.  We begin by noting that it is a fundamental tax principle that the Commissioner's determinations

---

[5]The parties have stipulated that the total fair market value of the lot and the improvements at the time of distribution was $920,000.  We therefore find that the value of the distribution was $920,000, not the larger amount determined in the deficiency notice.

are generally presumed correct, and taxpayers bear the burden of proving that these determinations are erroneous.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Where a corporation distributes appreciated property to a shareholder, the corporation recognizes gain as if the property were sold to the shareholder at its fair market value.  See sec. 311(b)(1).  Gain is recognized to the extent that the property's fair market value exceeds the corporation's adjusted basis.  See id.

The parties agree that the constructive dividend to petitioners caused the corporation to recognize taxable income to the extent the fair market value of the lot and the improvements exceeded the corporation's adjusted basis.  The parties also agree that the amount is taxable to the corporation as gross income.  The corporation has not established its adjusted bases in the lot and the improvements as anything other than what the parties conceded.  We find therefore that the corporation recognized additional income.

III.  Petitioners' Liability for the Accuracy-Related Penalty

We next consider petitioners' liability for the accuracy-related penalty under section 6662(a) and (b)(1).  Taxpayers are liable for an accuracy-related penalty for any portion of an underpayment of income tax attributable to negligence or disregard of rules and regulations, unless they establish that

there was reasonable cause for the underpayment and that they acted in good faith. Secs. 6662(a) and (b)(1), 6664(c)(1). Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code and includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioners did not keep any books and records to substantiate their claim that they owned the improvements and properly reported the distribution of the lot and the improvements to them. Moreover, petitioners failed to present any defense against the accuracy-related penalty. Petitioners admit that they did not seek professional tax advice nor consider the tax ramifications of receiving the lot and the improvements as a distribution from the corporation. Accordingly, we sustain respondent's determination that petitioners are liable for the section 6662 accuracy-related penalty for 2004.

IV. The Corporation's Liability for the Accuracy-Related Penalty

We now turn to the corporation's liability for the accuracy-related penalty. Respondent determined that the corporation is liable for the accuracy-related penalty for a substantial understatement of income tax under section 6662(b)(2) for 2004. There is a substantial understatement of a corporation's income tax if the amount of the understatement exceeds the greater of 10

percent of the tax required to be shown on the return, or
$10,000.  Sec. 6662(d)(1)(B); sec. 1.6662-4(b), Income Tax Regs.

The corporation reported tax due of $5,398.  Respondent
determined the corporation had a $130,408 understatement from
failing to report an additional $920,000 in gross receipts.
Respondent has therefore met his burden of production with
respect to the corporation's substantial understatement of income
tax.  In addition, the corporation failed to present any defense
against the accuracy-related penalty.  Accordingly, we sustain
respondent's determination that the corporation is liable for the
section 6662 accuracy-related penalty.

We have considered petitioners' other arguments and conclude
they are irrelevant, moot, or meritless.

To reflect the foregoing and the concessions of the parties,

<u>Decisions will be entered
under Rule 155</u>.